PER CURIAM.
Shelley Goldman appeals the denial of a rule 3.850 motion for postconviction relief. We agree that the trial court erred in summarily denying the motion.
Following a jury trial, Goldman was convicted of DUI manslaughter unlawful blood alcohol/leaving the scene of an accident; DUI serious bodily injury; and leaving the scene of an accident with injury. *276 On direct appeal, she raised seven issues and this court reversed on one point agreeing that the convictions for DUI man-slaughterAeaving the scene of an accident and leaving the scene of an accident involving injury violated the prohibition against double jeopardy. The conviction for leaving the scene of an accident involving injury was reversed and the case was remanded for resentencing. Goldman v. State, 918 So.2d 442 (Fla. 4th DCA 2006). Goldman was resentenced on March 31, 2006, to 15.75 years followed by 10 years probation.
Goldman filed a 3.850 motion and supplements to her motion raising a total of eleven claims. The trial court initially granted an evidentiary hearing on one issue, ground eight, and reserved ruling on Goldman’s claim of cumulative error. However, the court subsequently granted the state’s motion for rehearing and concluded claims eight through eleven were untimely and were insufficient or refuted by the record.
Contrary to the circuit court’s ruling, Goldman’s claims regarding the failure to retain a toxicologist and to investigate the chain of custody of the blood evidence are legally sufficient and not refuted by the record.
In claim six, Goldman alleged her trial attorney provided ineffective assistance by failing to retain a toxicologist to challenge the blood alcohol analysis. Goldman’s supplemental postconviction motion summarized testimony at trial that was favorable to Goldman and would support a defense that the blood results were inaccurate. When she was interviewed by Officer Skirvin at the scene, Goldman said she drank two and a half beers between 9 p.m. and midnight and a blood test would prove it. According to a police report, the accident occurred around 2:48 a.m. Skirvin testified that she did not appear to be intoxicated. Her eyes appeared bloodshot and she seemed unsteady, but the officers agreed this would be consistent with her crying and typical of someone involved in an auto accident involving a death.
Regarding the blood samples, there was a gap in time on the property receipt of 31 to 43 hours[1] between the blood draw and the time the property receipt indicates the samples were placed in refrigeration. There was also a discrepancy between the property receipt and testimony at trial regarding who the officer turned the blood samples over to. One sample had clotted and was not usable. The other sample indicated a blood alcohol content (BAC) of 0.20. The state’s expert testified that a person with this blood alcohol level would exhibit confusion, staggering, impaired cognitive function and slurred speech. Goldman did not exhibit these signs. Officers noticed a faint odor of alcohol and she appeared upset.
The supplemental motion alleged that Goldman has now retained a toxicologist who would testify that improper handling of the blood samples, such as storing at high temperatures, can result in a higher BAC reading.
Goldman argued that trial counsel should have presented expert testimony to refute that Goldman was intoxicated at the time of the accident. Because defense counsel failed to call a toxicologist, Goldman was unable to present to the jury scientific evidence about what happens if blood samples are not properly refrigerated. Goldman believes she could have successfully challenged the BAC evidence, *277 and as a result, the state would have to prove intoxication through the officers’ testimony. The officer who interviewed her indicated that she did not appear to be intoxicated, and no roadside sobriety tests were administered. Moreover, she argues if they had believed she was intoxicated, the officers would have arrested her at the scene instead of releasing her. Absent the BAC evidence, Goldman believes the state did not have sufficient evidence of intoxication and the jury would have acquitted her of the DUI manslaughter charges and DUI serious bodily injury.
Goldman amended this claim in reply to the state’s response and attached a report from toxicologist Lawrence Masten, which explained why he believed the blood results in this case were unreliable and very likely higher than Goldman’s actual blood alcohol level at the time of collection.
The state argued this claim was refuted by the record because when the defense rested at trial, counsel indicated they had “blood people” and other experts available, but had decided not to call these witnesses. However, defense counsel did not file a witness list naming any toxicologist or blood expert. In addition, according to Goldman’s amended postconviction claim, her trial attorney has since admitted that he did not retain a toxicologist.
If defense counsel never consulted a toxicologist and Goldman did not know that there was a basis to challenge the blood results, the waiver of her right to present evidence was not knowing and voluntary. Even assuming defense counsel had investigated this issue, the failure to present evidence that could explain why the BAC results could be wrong where Goldman otherwise had no good defense was not a reasonable strategy. See, e.g., Cabrera v. State, 766 So.2d 1131, 1134 (Fla. 2d DCA 2000).
Based on the cross-examination of the state’s toxicologist at trial, it appears defense counsel was not prepared to challenge the BAC results. Counsel asked the toxicologist only one question that addressed this issue, whether improper storage and handling could affect the reading, and the expert stated it was possible. Counsel had no further questions for the expert and it appears the jury did not hear any evidence that could explain why a sealed tube could yield unreliable test results.
The state also argued this claim is speculative. However, Goldman has pointed to a number of factors that would support her belief that the blood may have been mishandled and the test results were inaccurate including her behavior at the scene, the inability to collect a full vial of blood (a sign of loss of vacuum in the tube, which could lead to contamination of the sample), the time that elapsed between collection and delivery to the property room, and the clotting of the blood in- one tube,-which could indicate mishandling. Goldman’s handwriting at the scene was inconsistent with a person having a blood alcohol level nearly three times the legal limit. In her statement to police she indicated that she wanted a blood test because it would prove she had only three beers. The state’s expert testified that a person Goldman’s size would have to drink six and a half beers to have a 0.20 BAC. Goldman was detained for five hours and made no request to use a restroom.
There are sufficient reasons apparent from the record to question the BAC results.. Goldman showed. a reasonable probability the outcome would have been different, if the jury had received expert testimony about how temperature, contamination from the loss of vacuum in the tube, and other mishandling could increase the amount of alcohol in the sample. This *278 testimony could reconcile the conflicting evidence and create a reasonable doubt about whether Goldman’s blood alcohol level exceeded the legal limit. This was the state’s main evidence of intoxication. The other signs of impairment were consistent with non-impairment.
In claim seven, Goldman raised a related issue arguing that trial counsel provided ineffective assistance by failing to adequately investigate the chain of custody of the blood samples. The evidence at trial did not indicate how the blood was stored during all time periods before testing, and there were some discrepancies between the chain of custody testimony at trial and the property receipt. Goldman did not show a probability of tampering or grounds to exclude the evidence based on the chain of custody, and she did not show that the storage conditions did not comply with the implied consent law. However, investigation of the handling and storage of the blood samples could have explained the seemingly anomalous test results. To the extent this claim is related to claim six, it is legally sufficient and it is not refuted by the record.
Finally, Goldman raises a claim of cumulative error pointing to other alleged deficiencies by trial counsel. Several of Goldman’s claims indicate that counsel may have relied on an unavailable defense and misled the jury about evidence the defense would present. Goldman may not have satisfied the prejudice prong of Strickland[2] in each of these claims individually. However, taken together in light of the legally sufficient claims of ineffective assistance of counsel in grounds six and seven, we cannot say that Goldman was not prejudiced by cumulative errors in this case. See Henry v. State, 652 So.2d 1263 (Fla. 4th DCA 1995).
We reverse and remand for an eviden-tiary hearing on claims six and seven and Goldman’s claim of cumulative error.

Reversed and Remanded.

HAZOURI, MAY and DAMOORGIAN, JJ., concur.

. The property receipt did not indicate whether the samples were received at 11 a.m. or p.m.

. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).